**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IN RE: | |
| HARPER, Russell T. and <br> HARPER. Shannon C., | Case No. 05-13352-R <br> Chapter 7 |
| Debtors. | |
| PATRICK J. MALLOY, III, Trustee, | Filed/Docketed <br> June 7, 2006 |
| Plaintiff, | |
| v. | Adv. No. 05-01151-R |
| WILSERV CREDIT UNION, | |
| Defendant. | |

### MEMORANDUM OPINION

On August 10, 2005, Plaintiff Patrick J. Malloy III, Trustee (the "Trustee"), filed a Complaint (Adv. Doc. 1) in which he claims priority over the security interest of Defendant Wilserv Credit Union (the "Credit Union") in the Debtors' 2001 Chevrolet Pickup (the "Vehicle") under Section 544(a) of the Bankruptcy Code. On January 4, 2006, the Court granted the Joint Motion for Order Authorizing Submission of Issues Upon Joint Stipulation (Adv. Doc. 12), filed on December 30, 2005. See Order Authorizing Submission of Issues Upon Joint Stipulation of Facts and the Filing of the Parties' Briefs (Adv. Doc. 13).

Before the Court are the Joint Stipulation of Facts (Adv. Doc. 14) filed on January 5, 2006 ("Stipulation"), Plaintiff's Opening Brief (Adv. Doc. 20) filed on February 13, 2006 ("Trustee's Brief"), Defendant's Brief in Response (Adv. Doc. 21) filed on March 3, 2006

(the "Credit Union's Brief"), and the Supplemental Joint Stipulation of Facts (Adv. Doc. 25) filed on June 5, 2006 ("Supplemental Stipulation").

**I.     Jurisdiction**

The Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(F) and (K); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma (effective as of March 2, 2005).

**II.    The Parties' Contentions**

The Trustee contends that the Credit Union did not have a perfected security interest in the Vehicle on May 27, 2005, the date that the Debtors Russell and Shannon Harper (the "Debtors") filed their Chapter 7 bankruptcy petition. Although the Trustee acknowledges that the Court has previously ruled that a security interest in a vehicle titled by the Cherokee Nation was properly perfected when the security interest attached,[1] he argues that it is significant that the Cherokee Nation, which issued the certificate of title covering the vehicle in that case, had entered into a "Compact" with the State of Oklahoma which permitted the Cherokee Nation to issue certificates of title to its members that resided within the Indian Territory defined in the Compact, but the Muscogee (Creek) Nation (the "Creek Nation"), which issued the certificate of title in this case, did not have such a "Compact." See Trustee's Brief at 3. The Trustee also argues that the Credit Union was required to comply

---

[1] See Order Denying Trustee's Motion for Summary Judgment and Granting Partial Summary Judgment to Bank of Commerce in Patrick J. Malloy, III, Trustee, v. Bank of Commerce (In re Dalton), Adv. No. 04-01061-R (Bankr. N.D. Okla. May 8, 2005), aff'd BAP No. NO-05-052 (B.A.P. 10th Cir. December 8, 2005).

with the provisions of Section 1110 of Title 47 of the Oklahoma Statutes because the certificate of title covering the Vehicle was issued to an Oklahoma citizen who did not reside on Indian land. Finally, the Trustee contends that the certificate of title was issued in violation of federal law, *citing* Oklahoma Tax Commission v. Sac and Fox Nation, 508 U.S. 114 (1993). Id. at 4-5. The Credit Union contends that the Vehicle was properly registered by the Creek Nation and the Credit Union's lien was perfected pursuant to Title 36 of the Creek Nation Code.

### III. Undisputed Material Facts

On September 1, 2001, the Debtors purchased the Vehicle from South Point Chevrolet (the "Dealer"). Supplemental Stipulation at ¶ 1. At the time of the purchase, the Debtors financed $22,589.00 of the purchase price through the Dealer. Id. at ¶ 2. The financing agreement was subsequently assigned to Union Acceptance Corp. Id. at ¶ 3. On October 5, 2001, the Creek Nation issued to the Debtors a certificate of title to the Vehicle. Certificate of Title, Exhibit A to the Complaint (the "Certificate of Title"); Answer (Adv. Doc. 5) at ¶ 2 (admitting authenticity of Exhibit A). Issuance of the Certificate of Title "verifies that according to the records of the Muscogee (Creek) Nation, the person named [therein] is an Enrolled member and the owner of the vehicle described." Id.

On October 18, 2001, the Debtors obtained a loan from the Credit Union in the amount of $28,611.93. Supplemental Stipulation at ¶ 4. In connection therewith, the Debtors executed a "Disclosure Statement and Agreement" (the "Security Agreement") in which the Debtors granted the Credit Union a security interest in the Vehicle to secure the loan, of

which $28,601.93 was paid directly to the Debtors and $10 was paid to "public officials," presumably for the lien entry fee.[2] Security Agreement, Exhibit A to the Stipulation. The Security Agreement provides that the "purpose" of the loan was to "refinance vehicle." Id. The Debtors used the loan proceeds to pay off the loan assigned to Union Acceptance Corp. Supplemental Stipulation at ¶ 5.[3] The parties agree that the Credit Union's security interest in the Vehicle is valid and enforceable against the Debtors. Stipulation at ¶ 2.

The Vehicle was registered with the Creek Nation pursuant to Section 3-103 of Title 36 of the Creek Nation Statutes. Although the Debtors did not reside on an Indian reservation, allotted Indian land, or a dependent Indian community at the time they purchased the Vehicle, the parties stipulate that the Debtors and the Vehicle met the requirements of the statute. Stipulation at ¶ 4. On December 13, 2001, the Credit Union executed and filed a lien entry form covering the Vehicle with the Muskogee Creek Nation Tax Commission, and

---

[2] In the Supplemental Stipulation, the parties state that the lien filing fee was paid to the Oklahoma Tax Commission. Id. at 5, 6. There is no evidence that a lien entry form was submitted to the Oklahoma Tax Commission, however. In their earlier Stipulation, the parties stated that the Credit Union "filed a lien entry form with the Muskogee Creek Nation Tax Commission" and that "no lien entry forms were filed with the Oklahoma Tax Commission." Stipulation at ¶ 3. The Lien Entry Form indicates that the Motor License Agent was the "MCN Tax Commission." Lien Entry Form, Exhibit B to the Stipulation.

[3] The parties also stipulate that "[n]o additional funds were advanced by [the Credit Union] to the [D]ebtors, other than to pay off the purchase contract held by Union Acceptance Corp., and for the Oklahoma Tax Commission lien filing fee." Supplemental Stipulation at ¶ 6. The parties do not explain why the Debtors would have borrowed $28,601.93 to pay off a loan made only seven weeks earlier in the amount of $22,589.00. Since the Credit Union loan proceeds were distributed directly to the Debtors and not to Union Acceptance Corp., the disposition of $6,012.93 of the proceeds is unclear.

4

the Credit Union's lien was noted on the Certificate of Title. Lien Entry Form, Exhibit B to the Stipulation; Certificate of Title.

On May 27, 2005, the Debtors filed a Joint Voluntary Petition for Relief Under Chapter 7, Case No. 05-13352-R, and listed the Vehicle as an asset of the estate.

**IV.   Conclusions of Law**

Section 544(a)(1) of the Bankruptcy Code "confers on a trustee in bankruptcy the same rights that an ideal hypothetical lien claimant without notice possesses as of the date the bankruptcy petition is filed." Pearson v. Salina Coffee House, Inc., 831 F.2d 1531, 1532 (10th Cir. 1987). Under Oklahoma law, a lien creditor has priority over an unperfected security interest. See 12A O.S. § 1-9-317. Thus, under Section 544(a)(1), the Trustee will have priority over an unperfected lien on property of the estate. The issue before the Court is whether the Credit Union had a perfected security interest in the Vehicle on May 27, 2005, the date the Debtors filed bankruptcy. If the Credit Union's interest was not perfected, the Trustee will prevail.

In order to assess the relative rights of the Trustee and the Credit Union, the Court must examine the applicable law. The choice of law provision found in Oklahoma's Uniform Commercial Code (the "OUCC"), entitled "[l]aw governing perfection and priority of security interests," states–

> *Except as otherwise provided in Sections 1-9-303 through 1-9-306* of this title, the following rules determine the law governing perfection, the effect of perfection or non-perfection, and the priority of a security interest in collateral
> . . .

> (1) Except as otherwise provided in this section, while a *debtor is located* in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in the collateral.

12A O.S. § 1-9-301 (emphasis added).[4]

Initially, the Court must determine whether OUCC Section 1-9-303 excepts the Debtors and the Vehicle from Section 1-9-301's choice of law regime.[5] OUCC Section 1-9-303 defines the "law governing perfection and priority of security interests in goods covered by a certificate of title."

> (a) This section applies to goods covered by a certificate of title, even if there is no other relationship between the jurisdiction under whose certificate of title the goods are covered and the goods or the debtor.
>
> (b) *Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority*. . . .
>
> (c) *The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection*, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.

12A O.S. § 1-9-303 (emphasis added).[6]

---

[4] All citations to Oklahoma statutes herein refer to the statute that was in effect as of May 27, 2005 (the bankruptcy petition date), unless otherwise noted.

[5] The exceptions to OUCC Section 1-9-301 provided in Sections 1-9-304 (perfection and priority of security interests in deposit accounts), 1-9-305 (perfection and priority of security interests in investment property), and 1-9-306 (perfection and priority of security interests in letter-of-credit rights) are not even arguably applicable in this case.

[6] Comment 3 of the Uniform Commercial Code Comments (2001 Main Volume) states–

The foregoing Section 1-9-303 only applies, however, if the Vehicle is covered by a "certificate of title" as that term is defined in the Definitions section of Article 9 of the OUCC.  OUCC Section 1-9-102(10) provides that for purposes of Article 9–

> "Certificate of title" means a certificate of title with respect to which a statute provides for the security interest in question to be indicated on the certificate *as a condition or result* of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral.

12A O.S. § 1-9-102(10) (emphasis added).

The Creek Nation's Motor Vehicle Tax and License Code provides, in section 3-104(B) of title 36 of the Creek Nation Code ("Creek Motor Vehicle Registration Statute"), that the Creek Nation shall issue a certificate of title to the purchaser of a vehicle "upon proper application and payment of all fees and taxes."[7] The same statute further provides that "[n]otice of liens against said vehicle shall be placed upon said title upon request of the lending institution." Id. The Creek Motor Vehicle Registration Statute does not provide (or even suggest) that noting the lien on the certificate of title issued by the Creek Nation *is a condition* to the lien holder obtaining priority over a lien creditor, or that noting the lien

---

Normally, under the law of the relevant jurisdiction, the perfection step would consist of compliance with that jurisdiction's certificate-of-title statute and a resulting notation of the security interest on the certificate of title. See Section 9-311(b).  In the typical case of an automobile . . . a person who wishes to take a security interest in the vehicle can ascertain whether it is subject to any security interests by looking at the certificate of title.

[7]This statute became effective on August 1, 2001.

7

*results* in priority over a lien creditor.[8]  Accordingly, the Certificate of Title issued by the Creek Nation in this case, like the certificate of title issued by the Cherokee Nation in the recently decided Dalton case, is not a "certificate of title" as defined by the OUCC.  See Patrick J. Malloy, III, Trustee, v. Bank of Commerce (In re Dalton), Adv. No. 04-01061-R (Bankr. N.D. Okla. May 8, 2005) ("Dalton"), at 6-7, *aff'd* BAP No. NO-05-052 (B.A.P. 10th Cir. December 8, 2005).  Because the Creek Nation title is not a "certificate of title" under OUCC Section 1-9-102(10), then, upon returning to the choice of law rules of OUCC Section 1-9-301, the Court is directed to the law of the jurisdiction where the Debtors are located (rather than the law of the jurisdiction that issued the Certificate of Title) to determine perfection.  "A debtor who is an individual is located at the individual's principal residence." 12A O.S. § 1-9-307(b)(1).  The Debtors reside in Oklahoma, and the parties stipulated that the Debtors did not live on an Indian reservation, allotted Indian land or in a dependent Indian community.  Therefore, Oklahoma perfection law applies.

---

[8]Section 7-405(C) of Title 24 of the Creek Nation Code, which was supplied to the Court by the parties, provides that "[l]iens have priority according to the time of their creation, so long as the instruments creating the liens are duly recorded, and unless otherwise accorded a different status under the Nation's law."  Section 7-405 is contained in Subchapter 4 of Title 24 of the Creek Nation Code, which is entitled "Lien Procedures." Title 24 appears to govern "Housing" and "Mortgage Foreclosure and Eviction," however, which leads the Court to conclude that the lien procedures contained in Subchapter 4 apply only to liens on interests in real estate.  This belief is enhanced by the requirement that *recording* an instrument creating the lien (presumably in the land records) is a prerequisite to achieving priority.  Thus, it would be inappropriate to incorporate the lien priority provisions of Section 7-405 of Title 24 into the Creek Motor Vehicle Registration Statute in order to create a priority scheme that is envisioned by OUCC Sections 1-9-102(10) and 1-9-303 as a threshold to invoking the "certificate of title" provisions of the OUCC.

Pursuant to OUCC Section 1-9-308, "[e]xcept as otherwise provided in this section and Section 1-9-309 of this title [relating to automatic perfection], a security interest is perfected if it has attached and all of the applicable requirements for perfection in Sections 1-9-310 through 1-9-316 of this title have been satisfied."  12A O.S. § 1-9-308(a).

OUCC Section 1-9-311 governs "[p]erfection of security interests in property subject to certain statutes, regulations, and treaties" and directly addresses liens noted on "certificates of title" that conform to the OUCC definition of "certificate of title" as well as liens noted on "certificates of title issued by [an] Indian tribe."  It states–

> (a)  Except as otherwise provided in subsection (d) of this section [regarding vehicles held in inventory], the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to:
>
> *****
>
> (3) a certificate of title statute of another jurisdiction which provides for a security interest to be indicated on the certificate as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the property; or
>
> (4) the law or procedure of a federally recognized Indian tribe, if the security interest is in a vehicle registered or to be registered by the federally recognized Indian tribe and if within thirty (30) days after the security interest attaches, it is noted on the face of a certificate of title issued by the Indian tribe or, notwithstanding subsection G of Section 1110 of Title 47 of the Oklahoma Statutes, the security interest is otherwise perfected under an applicable law or procedure of that tribe.

12A O.S. Supp. 2005, § 1-9-311(a). Because the Court concludes that certificates of title issued by the Creek Nation do not fall within the Section 1-9-102(10) definition of "certificate of title," the Court must look to subsection (4) rather than subsection (3).

Subsection (4) was enacted in 2005, and became effective on May 5, 2005.[9] The first clause of OUCC Section 1-9-311(a)(4) deems liens in vehicles registered by Indian tribes perfected without the filing of a financing statement if the lien is noted on the title within thirty days of attachment, regardless of the tribe's perfection law (or absence of perfection law). The undisputed facts reflect that more than thirty days elapsed between the attachment of the security interest (October 18, 2001)[10] and the notation of the Credit Union's lien on the certificate of title (December 13, 2001). See Certificate of Title, Exhibit A to Complaint; Note and Security Agreement, Exhibit B to Stipulation. Accordingly, the Credit Union's lien was not perfected by notation under the first clause of subsection (4) and the Court must determine whether the Credit Union's security interest was *otherwise perfected* under an

---

[9] The Debtors filed their bankruptcy petition on May 27, 2005. Thus, OUCC Section 1-9-311(a)(4) was in effect at the time the Trustee obtained his hypothetical lien creditor status under Section 544(a) of the Bankruptcy Code and consequently when the Trustee's cause of action seeking a declaration of lien priority arose.

[10] Attachment occurs when a security interest becomes enforceable against the collateral. See 12A O.S. § 1-9-203(a). A security interest becomes enforceable when value has been given by the secured party, the debtor obtains rights in the collateral sufficient to transfer an interest to the secured party, and the debtor has executed a security agreement describing the collateral. See 12A O.S. § 1-9-203(b). The Debtors obtained rights in the collateral on September 1, 2001, and executed the Security Agreement and obtained value from the secured party (the loan proceeds) on October 18, 2001.

applicable law or procedure of the tribe, which again requires the examination of the Creek Nation Code.

As stated above, the Creek Motor Vehicle Registration Statute does not address the concept of *perfection* of liens; it merely provides that a lien will be noted on the title if the financing institution requests the same.[11]  The parties did not supply any Creek Nation law resembling a commercial code or procedure that governs creation, perfection, priority, or foreclosure of liens on personal property.  Because it appears that the Creek Nation Code lacks a perfection statute or procedure, the Court cannot conclude that the Credit Union "otherwise perfected" its security interest under an applicable law or procedure of the Creek Nation contemplated by the second clause of OUCC Section 1-9-311(a)(4).

OUCC Section 1-9-311(b) states that "a security interest in property subject to a statute, regulation, or treaty described in subsection (a) of this section may be perfected only by compliance with those requirements."  Because the Creek Nation does not have a perfection scheme, the only way the Credit Union could have perfected its security interest under Section 1-9-311(a)(4) was to obtain a notation on the title within thirty days of

---

[11]See, for example, Section 1110 of title 47 of the Oklahoma Statutes, which explicitly provides a procedure for perfection of a security interest in a vehicle.  It states–

> a security interest in a vehicle as to which a certificate of title may be properly issued by the Oklahoma Tax Commission *shall be perfected* only when a lien entry form, and the existing certificate of title, if any, or application . . . and the required fee are delivered to the Tax Commission.

47 O.S. § 1110(A)(1) (emphasis added).

attachment, which it failed to do. In <u>Dalton</u>, the Court concluded that the lender's security interest in a vehicle registered by the Cherokee Nation was automatically perfected under OUCC Section 1-9-309(1) as a purchase money security interest. <u>Dalton</u>, Order at 8-10. OUCC Section 1-9-311(a)(4) was not applicable in the <u>Dalton</u> case, however, because the Daltons' bankruptcy predated the enactment of Section 1-9-311(a)(4). Thus, the lender in <u>Dalton</u> was not precluded by 1-9-311(b) from obtaining perfection by some means other than Section 1-9-311(a)(4). In this case, however, it appears that Section 1-9-311(b) precludes perfection of liens in vehicles registered by Indian tribes by means other than those stated in 1-9-311(a)(4).

The Credit Union could not have foreseen in 2001, when it attempted to perfect its lien, that Section 1-9-311(a)(4) would deem a lien perfected only if it was noted on a title issued by an Indian tribe within thirty days of attachment, and the Credit Union could not have complied with the law after its enactment in May 2005 because attachment had long since occurred. Thus, the Court must determine whether Section 1-9-311(a)(4) was intended to apply to liens obtained prior to its enactment, and if not, what perfection law was in effect when the Credit Union obtained its lien.

"The general rule is statutes are to be applied prospectively only." <u>Oklahoma Bd. of Medical Licensure and Supervision v. Oklahoma Bd. of Examiners in Optometry</u>, 1995 OK 13, 893 P.2d 498, 499 (citation omitted). "This general rule is not applicable to statutes affecting only procedure because no one has a vested right in any particular procedure. Thus, statutes that affect procedures and not substantive rights or vested rights, will be given

retrospective effect." Id.  For instance, a statute that granted the Oklahoma Medical Board authority to bring declaratory judgment actions to determine whether particular practices constitute unauthorized practice of medicine was found to be a procedural statute which did not impact any vested rights and therefore such statute was applicable to a lawsuit filed prior to the enactment of the law.  Id. at 499-500.  The Oklahoma Supreme Court has also concluded that a statutory amendment that extended the time for seeking appeal-related attorney fees was procedural and therefore was applicable to appeals that were filed prior to the amendment of the statute.  See McCormack v. Town of Granite, 1996 OK 19, 913 P.2d 282, 285.  A statute may also operate retroactively if the statute clearly indicates that the legislature intended it to be applied to conduct predating the statute.  See Mid-Continent Casualty Co. v. P&H Supply, Inc., 1971 OK 135, 490 P.2d 1358, 1361.

However, even "[r]emedial or procedural statutes may operate retrospectively only where they do not create, enlarge, diminish or destroy vested rights.  A substantive change that alters the rights or obligations of a party cannot be viewed as solely a remedial or procedural change and cannot be retrospectively applied." Sudbury v. Deterding, 2001 OK 10, 19 P.3d 856, 860 (citation omitted).  An amendment to a statute that ascertained the measure of damages to which a property owner is entitled for wrongful injury to timber or trees, which increased the tortfeaser's liability from three times actual damages to ten times actual damages, was determined not to be merely procedural or remedial, but rather a substantive increase in potential liability, and therefore could not be applied to conduct occurring prior to the amendment.  Id.  An amendment to a statute of limitations cannot be

13

applied to a claim that arose prior to the amendment if such application would divest the plaintiff from its right to assert a claim that had already accrued and was not time-barred under the old statute. See Mid-Continent, 490 P.2d at 1361. In another case, the Oklahoma Court of Civil Appeals held that an amendment to a provision of the Oklahoma Consumer Credit Code that restricted the time in which a consumer debtor could rescind a loan transaction was inapplicable to a debtor who entered into a loan transaction under the prior law which permitted rescission any time prior to the delivery of all required disclosures. See Testerman v. First Family Life Ins. Co., 1990 OK CIV APP 108, 808 P.2d 703, 708. "Rescission is a contractual right which vested and accrued at the execution of the loan documents. At that point in time, the right to rescind was fixed under the unamended version of [the statute], and the statutory provisions became as much a part of the contract as if recited in it." Id.

In this case, OUCC Section 1-9-311(a)(4) became effective more than three years after the Credit Union obtained its lien and attempted to perfect its security interest in the Vehicle.[12] Thus, if OUCC Section 1-9-311(b) is applied to preclude the Credit Union from perfecting in a manner other than as set forth in subsection (a)(4), the Credit Union would be deprived of perfection it may have accomplished under the OUCC prior to the

---

[12] Although the legislature declared the enactment of OUCC Section 1-9-311(a)(4) an emergency and "immediately necessary for the preservation of the public peace, health and safety," and therefore effective immediately upon passage, the legislature did not indicate that its provisions should apply retroactively. 2005 Okla. Sess. Law Serv. Ch. 139 (H.B. 2028) (50th Leg., 1st Sess.), §§ 41, 42.

14

amendment. Accordingly, the Court must analyze whether the Credit Union perfected its lien under the OUCC as it existed in October 2001 and under any statutes or subsequent statutory amendments that would require the Credit Union to re-perfect its lien at any point in time.[13]

In Dalton, the Court analyzed perfection under the OUCC of a lien on a vehicle registered by an Indian tribe prior to the May 5, 2005 amendment to OUCC Section 1-9-311(a)(4). In that case, the lender's lien was a purchase-money security interest in consumer goods. OUCC Section 1-9-309(1) provides that a purchase-money security interest in consumer goods that are not subject to a certificate of title statute becomes perfected when the security interest attaches. See 12A O.S. § 1-9-309(1).

In this case, however, the Credit Union's lien is not a purchase-money security interest. Section 1-9-103 of the OUCC provides that "[a] security interest is a purchase-money security interest . . . to the extent that the goods are purchase-money collateral with respect to that security interest." 12A O.S. § 1-9-103(b)(1). The OUCC defines "purchase-money collateral" as "goods . . . that secure[] a purchase-money obligation incurred with respect to that collateral" and defines a "purchase-money obligation" as "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." 12A O.S. § 1-9-103(A)(1) and (2). In this case, the Debtors already owned the Vehicle when they secured the Credit Union loan with the Vehicle, and the loan proceeds were paid directly to

---

[13]For instance, the OUCC contains provisions for re-perfecting when some types of collateral are moved out of the jurisdiction. See, e.g., 12A O.S. § 1-9-316.

the Debtors, not to the seller of the Vehicle. Thus, the loan was not incurred to pay the price of the Vehicle (because the price of the Vehicle had already been paid to the Dealer) nor was it given to "enable the debtor[s] to acquire rights in or the use of the collateral," as the Debtors already had rights in and use of the Vehicle when they incurred the obligation to the Credit Union.[14] Therefore, the Credit Union's lien was not automatically perfected upon attachment under OUCC Section 1-9-309(1).

OUCC Section 1-9-310 provides that except in circumstances not present in this case, "a financing statement must be filed to perfect all security interests." 12A O.S. § 1-9-310(a). There is no evidence that the Credit Union filed a financing statement with the appropriate filing office in Oklahoma. Therefore, the Court concludes that the Credit Union is not

---

[14] The Court acknowledges that a secured party does not necessarily lose its purchase-money security interest upon refinancing, extending or consolidating the original purchase-money obligation. See, e.g., Billings v. Avco Colorado Industrial Bank (In re Billings), 838 F.2d 405, 410 (10th Cir. 1988); Russell v. Associates Financial Services Co. (In re Russell), 29 B.R. 270 (Bankr. W.D. Okla. 1983) (creditor retains purchase-money security interest to the extent that unpaid purchase-money obligation is incorporated into refinanced or renewed loan); Oklahoma Comment to 12A O.S. § 1-9-103. However, in this case, the Credit Union was not the secured party who provided the funds for the original purchase price of the Vehicle. If the Credit Union had extended the original purchase-money loan, it may have had a purchase-money security interest that would survive a refinancing transaction, but under the facts of this case, it had no pre-existing purchase-money security interest to retain. See, e.g., In re Moody, 97 B.R. 605, 607 (Bankr. D. Kan. 1989) ("courts have consistently found that if the original debt is refinanced by a third party, then the lien loses its purchase money status"); In re Janz, 67 B.R. 553, 556 (Bankr. D. N.D. 1986); Johnson v. Richardson (In re Richardson), 47 B.R. 113, 118 (Bankr. W.D. Wis. 1985).

perfected, and pursuant to OUCC Section 1-9-317(a)(2),[15] the Trustee's hypothetical lien has priority over the Credit Union's unperfected lien on the Vehicle.[16]

**V.    Conclusion**

For the reasons cited above, judgment is granted in favor of the Trustee on the Trustee's Section 544(a) claim.  A judgment consistent with this Order is entered concurrently herewith.

**SO ORDERED** this 7th day of June, 2006.

_____
DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

---

[15] Section 1-9-317(a)(2) provides that "[a] security interest . . . is subordinate to the rights of . . . a person that becomes a lien creditor before . . . the security interest . . . is perfected."  12A O.S. § 1-9-317(a)(2)(A).

[16] The Court concludes that the fact that the Creek Nation has not entered into a Compact with the State of Oklahoma is not relevant to the resolution of this matter, nor does the United States Supreme Court case cited by the Trustee have any bearing on the issue of perfection of the Credit Union's lien.

17