UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE:<br><br>HARPER, Russell T. and<br>HARPER. Shannon C.,<br><br>                  Debtors.<br><br>PATRICK J. MALLOY, III, Trustee,<br><br>                  Plaintiff,<br>v.<br><br>WILSERV CREDIT UNION,<br><br>                  Defendant. | Case No. 05-13352-R<br>Chapter 7<br><br><br>Filed/Docketed<br>July 17, 2006<br><br>Adv. No. 05-01151-R |

### ORDER DENYING MOTION FOR NEW TRIAL

On June 7, 2006, the Court entered a Memorandum Opinion (Adv. Doc. 26) and Judgment (Adv. Doc. 27) in the above-captioned adversary proceeding upon consideration of the parties' Joint Stipulation of Facts (Adv. Doc. 14) and Supplemental Joint Stipulation of Facts (Adv. Doc. 25). Pursuant to stipulated facts and legal conclusions drawn therefrom, as stated in the Memorandum Opinion, judgment was entered in favor of the Plaintiff, Patrick J. Malloy III, Trustee ("Trustee"), and against the Defendant, Wilserv Credit Union ("Credit Union"). The Court concluded that the Credit Union's security interest in the Debtors' 2001 Chevrolet pickup truck (the "Vehicle") was not a purchase money security interest and therefore was not automatically perfected, and concluded further that the Credit Union failed to otherwise perfect its lien. Thus, the Court held that the Trustee's interest as a hypothetical

lien creditor under Section 544 of the Bankruptcy Code was prior and superior to the Credit Union's lien on the Vehicle.

On June 16, 2006, the Credit Union filed its Motion for New Trial and Brief in Support (Adv. Doc. 29), alleging that (1) the parties' stipulation concerning the purchase price of the Vehicle contained a typographical error which, when remedied, would arguably prove that the Credit Union's security interest was a purchase money security interest; (2) the Court committed legal error in concluding that the Credit Union did not acquire a purchase money security interest by refinancing the Debtors' original purchase money loan; (3) the Credit Union was entitled to retain the prior lender's purchase money security interest through the doctrine of equitable subrogation; and (4) the Creek Nation Title on the Vehicle, which noted the Credit Union's security interest, should be accorded the status of a Certificate of Title under the Oklahoma Uniform Commercial Code (the "OUCC"), which would render the Credit Union's security interest perfected under OUCC Section 1-9-311.

On June 30, 2006, the Trustee filed the Trustee's Objection to Defendant's Motion for New Trial and Brief in Support (Adv. Doc. 30), disputing the legal arguments advanced by the Credit Union. The Trustee does not dispute the Credit Union's allegation that the stipulation inaccurately states the original purchase price of the Vehicle or that the actual original purchase price of the Vehicle was $28,589.00 rather than $22,589.00.

Upon consideration of the pleadings, the record in this adversary proceeding, and applicable law, the Court finds and concludes that the Motion for New Trial should be denied.

A. <u>Correction of the erroneous stipulated fact would not alter the Court's analysis.</u>

The fact that the Credit Union advanced to the Debtors the exact amount required to pay off the purchase money loan extended by the Debtors' original lender (rather than an amount in excess of $6,000 more than required to pay off the original purchase money loan) does not change the Court's conclusion that the Credit Union's security interest was not a purchase money security interest.[1] It is undisputed that the Debtors *already owned the Vehicle* when the Credit Union extended credit to the Debtors for the purpose of refinancing the original purchase money loan secured by the Vehicle. It remains true that the Credit Union's "loan was not incurred to pay the price of the Vehicle (because the price of the Vehicle had already been paid to the Dealer) nor was it given to 'enable the debtor[s] to acquire rights in or the use of the collateral,' as the Debtors already had rights in and use of the Vehicle when they incurred the obligation to the Credit Union." Memorandum Opinion at 16.

Because the erroneous stipulated fact did not affect the outcome of the proceeding, neither party was prejudiced by the error, and a new trial is not warranted.

---

[1] Amending the stipulation to correctly state the Vehicle's original purchase price would clear up an inconsistency in the stipulated facts and would render footnote 3 to the Memorandum Opinion moot, but because the *amount* loaned to the Debtors by the Credit Union was not critical to the Court's conclusion that the Credit Union's lien was not a purchase money security interest, such an amendment would not affect the Court's analysis of the facts or its legal conclusion.

B.   <u>The Court correctly applied the purchase money security interest provisions of the OUCC to the stipulated material facts</u>.

The Credit Union contends that after the Court requested a supplemental stipulation "regarding the issue of whether or not the loan made by WilServ was a 'purchase money' loan," the Credit Union "was deprived of an opportunity to brief the issue of whether or not the loan should be considered as a purchase money loan." Motion for New Trial at 1-2. The Court observes that while both parties were advised of the Court's intent to determine whether the Credit Union's lien was a purchase money security interest in order to determine whether the Credit Union's lien was perfected, neither party submitted a brief in connection with the supplemental stipulation. Nevertheless, in rendering the Judgment, the Court had already carefully considered the authorities that were belatedly advanced by the Credit Union in its Motion for New Trial, including the Oklahoma Comments to 12A O.S. § 1-9-103, <u>Russell v. Associates Financial Services Co. (In re Russell)</u>, 29 B.R. 270 (Bankr. W.D. Okla. 1983),[2] and <u>Nat'l Bank of Commerce v. First Nat'l Bank & Trust Co.</u>, 1968 OK 151, 446 P.2d 277.[3]

---

[2]The Oklahoma Comments to 12A O.S. § 1-9-103 and the <u>Russell</u> case are cited in the Memorandum Opinion at 16, n.14.

[3]The disputed issue in <u>Nat'l Bank of Commerce v. First Nat'l Bank & Trust Co.</u> was classification of collateral, not automatic perfection of a purchase-money security interest in consumer goods. Once the Oklahoma Supreme Court affirmed the trial court's determination that the collateral was equipment rather than a consumer good, the facts revealed that only one secured party filed a financing statement in the appropriate filing office, and therefore only that party had perfected its lien. Thus, that party had priority over the unperfected lien of the other party. The court's statement that the secured party had perfected a "purchase-money security interest" was not necessary to the holding. Further, the court's statement that the party's lien was a "purchase-money security interest" was not supported by any analysis of the factors necessary to render a lien a "purchase-money security interest." Apparently,

Moreover, in the Memorandum Opinion, the Court acknowledged that Oklahoma has adopted the "dual status" rule that recognizes that a secured party may retain perfection based on the purchase-money security interest status of its lien when refinancing a purchase-money loan.  Footnote 14 of the Memorandum Opinion states:  "The Court acknowledges that a secured party does not necessarily lose its purchase-money security interest upon refinancing, extending or consolidating the original purchase-money obligation."  The Court observed, however, that automatic perfection of a purchase-money security interest continues only if the original secured party refinances the purchase-money loan, and a subsequent third party lender does not enjoy such a benefit because "it had no pre-existing purchase-money security interest to retain."  Memorandum Opinion at 16, n.14, citing cases.

Accordingly, the Credit Union is not entitled to a new trial or modification of the Judgment due to an alleged manifest error of law concerning the elements of a purchase money security interest.

---

the court *assumed* that the lien was a purchase-money security interest because the secured party (a bank) loaned money to the debtor *to cover a check* written by the debtor to the seller for the purchase price of the vehicle.  The debtor obtained the loan to purchase the vehicle, and granted the lender a security interest in the vehicle, only six days after the debtor had written the check to the seller and obtained possession of the vehicle, and the loan was intended to fund ("cover") the purchase-money check.  Thus, the loan was substantially contemporaneous with the purchase of the vehicle.

In this case, the Debtors borrowed funds from the Dealer to purchase the Vehicle on September 1, 2001, and granted the Dealer a security interest in the Vehicle.  The Dealer assigned the note and security interest to Union Acceptance Corp.  Seven weeks later, the Debtors borrowed funds from the Credit Union, granted a security interest in the Vehicle to the Credit Union and paid the debt to Union Acceptance Corp.  Even if the reference to a purchase-money security interest in Nat'l Bank of Commerce was not dicta, this case is factually distinguishable in any event.

5

C. **The Credit Union is not entitled to attain perfection of its lien under the doctrine of equitable subrogation.**

The Credit Union asserts that application of the doctrine of equitable subrogation would result in the perfection of its lien against the Trustee. Because the Credit Union did not raise equitable subrogation as a theory of perfection in its pre-judgment submissions, the Court did not consider whether the doctrine was applicable before entering the Judgment, but after reviewing the state of the law, the Court concludes that equitable subrogation cannot be invoked to perfect the Credit Union's lien.

In Oklahoma,[4] subrogation to a prior lienholder's superior security position in property is available by statute by "[o]ne who has a lien, inferior to another upon the same property" if such person "satisf[ies] the claim secured thereby." 42 O.S. § 19(2).[5] This

---

[4]"[W]hile federal law defines a bankruptcy trustee's avoidance powers, state law governs the determination of property rights, including the perfection of liens." Vieira v. Pearce (In re Pearce), 236 B.R. 261, 264 (Bankr. S.D. Ill. 1999). "Thus, to the extent a state court would grant relief to an unperfected creditor under the equitable doctrine of subrogation, and to the extent such a result would not be inconsistent with the language and policy of federal bankruptcy statutes, this Court must give effect to state subrogation principles in determining the efficacy of such creditor's lien against the avoiding powers of the trustee." Id.

[5]Section 19 provides in full–

One who has a lien, inferior to another upon the same property, has a right:

1. To redeem the property in the same manner as its owner might, from the superior lien; and,
2. To be subrogated to all the benefits of the superior lien when necessary for the protection of his interests, upon satisfying the claim secured thereby.

42 O.S. § 19.

6

statutory remedy is not available to the Credit Union because the Credit Union did not have an inferior lien on the property when it advanced funds to the Debtors to satisfy the Debtors' debt to Union Acceptance Corp.

A non-statutory doctrine of equitable subrogation has evolved which entitles a secured party to step into the shoes of, and acquire the lien priority of, a prior secured lender whose debt is paid with the proceeds of a subsequent loan to the debtor. The Credit Union has not referred the Court to any Oklahoma case in which equitable subrogation has been applied to *perfect* a lien in favor of a secured party where the secured party has failed to act with due diligence to perfect the lien on its own behalf, however.

The most complete articulation of the non-statutory doctrine of equitable subrogation is found in Landis v. State *ex rel.* Commissioners of Land Office, 1937 OK 176, 66 P.2d 519, which states–

> The doctrine of subrogation has long been an established branch of equity jurisprudence. Although originally it was limited in application to actions where the relation of principal and surety existed and to those cases involving conventional subrogation, the doctrine as now applied by most courts is broad enough to cover every instance where payment is made by any person other than a volunteer of a debt for which another is primarily liable and which in equity and in good conscience should be discharged by another. The authorities are in conflict upon the right of one lending money upon the security of a forged or unauthorized mortgage which has been discharged by the money advanced upon the void mortgage. However, a majority in number, and in our opinion the better reasoned cases, hold that one lending money upon the security of a void mortgage is entitled to be subrogated to the rights of the mortgage under the prior valid mortgage which has been discharged with the proceeds of the void one. . . . *While the mere loan of money for the purpose of enabling the borrower to pay a debt will not entitle the lender to be subrogated to the right of the creditor whose debt was thus paid . . . this rule does not apply where one lends money upon real estate security for the express purpose of paying incumbrances on the same property believing in good faith*

7

> *that his security will of record be substituted in place of that which he discharges. . . .* Where money is advanced on defective security for the purpose of paying off a prior incumbrance, and where the person advancing the money expected to get good security therefor, the person advancing the money is not a volunteer, and in the absence of intervening equities, he will be held to be subrogated to the lien which the money advanced is used to pay.

Landis, 66 P.2d at 521-22 (quotations and citations omitted). The goal of equitable subrogation is "to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it." Landis, 66 P.2d at 522. The Court notes that the Landis court expressly limited the application of equitable subrogation to cases in which the collateral for the first and refinanced mortgages is real estate[6] and that the Landis court envisioned that equitable subrogation would equitably impose on the *mortgagor*, who had received the benefit of the loan but who might otherwise be freed from its obligations by virtue of granting a defective mortgage, the obligation to pay the debt from the mortgagor's property. Id. at 522 (refinancing lender was equitably subrogated and assumed the benefits of the valid mortgage it satisfied when evidence revealed that the new mortgage taken by the refinancing lender was void due to forgery). Under Landis, equitable subrogation is intended to give a lender who did not obtain an effective security interest (due to fraud or forgery of the debtor, for example) a vehicle under which it could enforce the security interest it expected to

---

[6]In at least one case, the Oklahoma Supreme Court considered equitable subrogation in connection with the priority of liens on personal property but the court rejected its application because the lienholder claiming equitable subrogation had constructive notice of the intervening liens it sought to supersede. See Citizens State Bank v. Pittsburg County Broadcasting Co., 1954 OK 51, 271 P.2d 725, 726 (refinancing lender sought equitable subrogation to advance ahead of intervening lienholders in an automobile; whether equitable subrogation is applicable to security interests in personal property was not at issue and was not decided one way or the other).

receive against the debtor's property, and nothing in <u>Landis</u> indicates that equitable subrogation should be applied to enhance the rights of a refinancing lienholder to the detriment of third party lienholders who had done nothing to cause the failure or invalidity of lender's security interest.

Certain Oklahoma cases appear to recognize that equity might justify subrogation to the rights of a first lienholder in favor of a subsequent lender who loaned funds to enable a debtor to pay off a debt secured by a first lien on property when the lender was somehow deceived into believing that the lender would obtain a first lien on the property but, due to no fault of the lender, it in fact obtains a lien *junior to undisclosed intervening liens*. In such a case, equity may entitle the lender to priority over the intervening liens "only when 'from all the facts and circumstances surrounding the transaction it is clearly to be implied that it was the intention of the parties that the person making the advance was to have security of equal dignity and position with that discharged.'" <u>Southwest Title & Trust Co. v. Norman Lumber Co.</u>, 1968 OK 71, 441 P.2d 430, 434. <u>See also</u> <u>Mortgage Electronic Registration Systems, Inc. v. United States</u>, 2006 OK CIV APP 45, 134 P.3d 913, 916.

However, in cases where a refinancing lender seeks to usurp the priority of intervening lienholders in property, Oklahoma courts have consistently required a showing that the refinancing lender believed that he would be substituted for the original lender but such substitution did not occur. Such evidence might consist of an agreement requiring the assignment of the prior mortgage to the refinancing lender. <u>See</u> <u>Southwest Title</u>, 441 P.2d at 433-34 (procuring an assignment of the prior mortgage was proof that the parties intended

to merely substitute the refinancing lender for the first mortgagee to preserve priority of the first mortgage); Citizens State Bank v. Pittsburg County Broadcasting Co., 1954 OK 51, 271 P.2d 725, 727 (first mortgagee provided a release of mortgage upon payment by refinancing lender; refinancing lender did not request an assignment of the first mortgage until after it learned of intervening liens, but such mortgage had already been released; thus, refinancing lender was not entitled to equitable subrogation); Bourquin v. Feland, 1941 OK 274, 117 P.2d 789, 791 (the judgment lienholder purchased the judgment (which lien was junior to the original mortgage) after the refinancing mortgage was executed but eight months before the first mortgage was released of record; "[o]n the surface, the whole transaction had all the earmarks of a completed arrangement to substitute liens, and, as a matter of law, was of such a nature as to put [the lienholder] on inquiry" that a superior mortgage existed).  Evidence that the parties intended that the first mortgage would be released and the refinancing lender would take a new mortgage negates the implication that the parties intended that the refinancing lender would step into the shoes of the first mortgagee. Citizens State Bank, 271 P.2d at 727.

Moreover, the lender seeking equitable subrogation must not be guilty of any lack of diligence in ascertaining the existence of intervening liens, or have committed any negligence in failing to protect its interests. See, e.g., Citizens State Bank, 271 P.2d at 728 (because refinancing lender had constructive notice of properly filed intervening liens, it was not equitable to intervening lienholders to grant refinancing lender priority of first mortgagee whose debt was satisfied with proceeds of refinanced loan); Owen v. Interstate Mortgage

Trust Co., 1922 OK 165, 211 P. 87, 89 (equitable subrogation not available to lender that failed to protect its interests when review of the record would have revealed prior judgment lien); Mortgage Electronic Registration Systems, 134 P.3d at 917 ("Negligence and improper business maneuvers by a lender might act to remove an equitable remedy entitling it to a priority lien"); King v. Towe, 2000 OK CIV APP 1, 996 P.2d 948, 950-51 (when assessing whether equitable subrogation should be applied, a lender that fails to practice due diligence in protecting its interest bears the risk of loss).

Unlike Landis, this case does not involve a void mortgage or security interest. The Credit Union has a valid security interest in the Vehicle; it just failed to perfect its interest against later lien creditors. Nor was the Credit Union's failure to perfect its valid security interest due to fraud, deception or other wrongdoing. There is no evidence that the Credit Union sought or was promised an assignment of Union Acceptance Corp.'s debt and security interest or that the Credit Union's lien would have "equal dignity and position with that [lien] discharged." Southwest Title, 441 P.2d at 434. In fact, the Credit Union advanced the proceeds of its loan directly to the Debtors, not to Union Acceptance Corp.[7] Although the law regarding perfection of liens on vehicles registered with Indian tribes is complex and

---

[7]Although the Disclosure Statement and Agreement ("Security Agreement") entered into between the Debtors and the Credit Union states that the purpose of the loan was to "Refinance Vehicle," nothing in the Security Agreement obligated the Debtors to provide the Credit Union with a *first lien* on the Vehicle, nor did the agreement expressly require the Debtors to use the proceeds of the Credit Union's loan to satisfy the Union Acceptance Corp. debt. See Exhibit A to Joint Stipulation of Facts. While the Court assumes that the Debtors in fact satisfied their debt to Union Acceptance Corp., under the terms of the Security Agreement, the Debtors could have applied the proceeds to another debt or purpose, and the Credit Union's lien might have been junior to the lien of Union Acceptance Corp.

11

unsettled, ultimately, only the Credit Union could have protected its interest in the Vehicle. For these reasons, the equities do not favor the Credit Union over the Trustee, and the Credit Union is not entitled to the benefits of equitable subordination. Accordingly, modification of the Judgment on that ground is not warranted.[8]

---

[8] Faced with a similar set of facts, an Illinois bankruptcy court, applying Illinois law, likewise refused to cure a creditor's failure to perfect its lien by application of equitable subrogation, stating that the creditor's "taking of new security to collateralize its loan underlines the fact that [the creditor] is not an innocent party needing the protection of equity to undo the fraud or mistake of another, but a sophisticated creditor in the business of making loans for a profit. Despite [the creditor's] delay in recording the debtors' mortgage, it is apparent that [the creditor] intended to rely on its own mortgage with the debtors rather than that of the previous mortgagee on the property." Vieira v. Pearce (In re Pearce), 236 B.R. 261, 266 (Bankr. S.D. Ill. 1999). "In the absence of a strong showing of equity on the part of a potential subrogee, this Court must not allow state subrogation principles to override the equitable purposes of bankruptcy law." Id at 267. See also Farmer v. LaSalle Bank (In re Morgan), 291 B.R. 795, 803 (Bankr. E.D. Tenn. 2003) (applying Tennessee subrogation law, the court refused to grant refinancing lender subrogation to prior perfected lender's position when refinancing lender failed to note its lien on the certificate of title of debtor's vehicle until after bankruptcy was filed; it was not inequitable to place the risk of loss on "the secured party who is ultimately responsible for seeing that the lien is properly noted" (quotations and citations omitted)); Equicredit Corp. v. Simms (In re Simms), 300 B.R. 877, 879 (Bankr. S.D. W.Va. 2003) (applying Ohio law, which provides "[e]quitable subrogation will not be used to benefit parties who were negligent in their business transactions, and who were obviously in the best position to protect their own interests," the court denied equitable subrogation to refinancing lender who failed to discover tax liens filed during the time between the recording of the first lender's mortgage and the refinancing lender's mortgage); In re American Applicance, 272 B.R. 587, 598 (Bankr. D. N.J. 2002) (under Delaware law, equitable subrogation not available where defect in security interest in property was not caused by fraud or mistake of a third party, but by negligence of lender); Boyd v. Superior Bank (In re Lewis), 270 B.R. 215 (Bankr. W.D. Mich. 2001) (applying Michigan law, court denied refinancing lender equitable subrogation to take advantage of prior lender's perfection date where refinancing lender failed to record its mortgage in a timely manner and consequently perfected within the preference period, rendering the mortgage voidable).
     For a contrary view, see Rinn v. First Union Nat'l Bank, 176 B.R. 401 (D. Md. 1995) (applying Maryland subrogation law).

D.  <u>The Creek Nation title is not a Certificate of Title under the OUCC.</u>

The Credit Union argues that the Title issued by the Creek Nation satisfies the requirements of OUCC Section 1-9-102(10) and is therefore a "Certificate of Title" for the purposes of Article 9 of the OUCC because the Creek Nation Title form provides a place to list the entry of a first lien and a second lien on the Vehicle. Motion for New Trial at 7-8. Section 1-9-102(10) provides that –

> "Certificate of title" means a certificate of title with respect to which *a statute* provides for the security interest in question to be indicated on the certificate of title as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral.

12A O.S. § 1-9-102(10) (emphasis added). While section 3-104(B) of title 36 of the Creek Nation Motor Vehicle Tax and License Code requires the tribe to reflect on the title a "notice of lien against said vehicle . . .upon request of the lending institution," no Creek Nation statute "provides for the security interest in question to be indicated on the certificate of title as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral." 12A O.S. § 1-9-102(10). So far as this Court has been able to discern from the submissions of the parties, the Creek Nation lacks a statutory scheme, such as a commercial code, that addresses perfection and priority of liens noted on a Creek Nation title as against a lien creditor. The form on which title is issued is not a statute nor does it address whether the noted lienholder has priority over a lien creditor. The Court cannot construct perfection and priority statutes for the Creek Nation where none exist.

Accordingly, the Court reaffirms its conclusion that the Creek Nation Title is not a "Certificate of Title" under the OUCC, as set forth in the Memorandum Opinion. Thus, the Credit Union is not entitled to a new trial or modification of the Judgment due to a manifest error in interpreting OUCC 1-9-102(10).

For the above reasons, the Credit Union's Motion for New Trial is denied.

**SO ORDERED** this 17th day of July, 2006.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE